IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| **HOME DEPOT U.S.A., INC.,** | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | Civil Action No. **3:06-CV-24-L** |
| | § | |
| **OHIO CASUALTY INSURANCE** | § | |
| **COMPANY,** | § | |
| | § | |
| Defendant. | § | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Before the court are two motions for summary judgment:  (1) Plaintiff Home Depot U.S.A.,

Inc.'s Motion for Summary Judgment, filed February 1, 2007, and (2) Defendant Ohio Casualty's

Motion for Summary Judgment, filed March 2, 2007.  After careful consideration of the motions,

briefs, responses, replies, record, and the applicable law, the court **grants** Defendant Ohio

Casualty's Motion for Summary Judgment, and **denies** Plaintiff Home Depot U.S.A., Inc.'s Motion

for Summary Judgment**.**

## I.  BACKGROUND

This diversity action for declaratory judgment and breach of contract was brought on January

5, 2006, by Plaintiff Home Depot U.S.A., Inc. ("Home Depot") against Defendant Ohio Casualty

Insurance Company ("Ohio").[1]  This action arose out of a dispute between Home Depot and Ohio

regarding Ohio's duty to defend Home Depot in an underlying lawsuit ("underlying lawsuit")

---

[1] Plaintiff's original Complaint and Request for Declaratory Judgment named "Ohio Casualty Group Mutual Insurance Company" as Defendant.  All subsequent pleadings filed by the parties refer to Defendant as "Ohio Casualty Insurance Company," which is apparently Defendant's correct name.  The court **directs** the clerk of the court to amend the docket sheet to reflect the correct name of Defendant as "Ohio Casualty Insurance Company."

**Memorandum Opinion and Order – Page 1**

brought by Robert and Beth Meyer (the "Meyers") on November 10, 2004.[2]  The parties do not dispute the basic facts, which the court will summarize briefly here and address in more detail later in the opinion, as necessary.

The Meyers sued Home Depot and its contracted installer for negligence and fraud, among other claims, for the faulty installation of four replacement windows that the Meyers had purchased from Home Depot on February 23, 1998.  Pl. App. at 46.  The Meyers' complaint alleged that Home Depot arranged for Eddie Davis ("Davis"), an employee or agent acting on its behalf, to install the windows, which were installed upside down and backwards.  *Id.* at 47.  The Meyers' complaint alleged that the improperly-installed windows led to water intrusion, causing wood decay and mold contamination that rendered their home uninhabitable and created health problems for their family.  *Id.*  The Meyers' complaint did not specify when the windows were installed, or when the damages began, but it stated that "several years after the windows were installed the Meyer[]s noticed water intrusion and . . . began to experience medical problems." *Id.*

Ohio takes the position that it has no duty to defend Home Depot in the underlying lawsuit, because the damages complained of by the Meyers did not occur within the coverage period of the insurance policy at issue, and because Home Depot failed to timely notify Ohio of the suit, as required by the policy.  Home Depot disputes both contentions and argues that Ohio has a duty to defend it because all conditions precedent have been met under the policy.  The insurance policy at issue, a commercial general liability policy, was actually purchased by Home Depot's installer,

---

[2] The underlying lawsuit, Cause No. CT-006468-04, *Robert Meyer and Beth Meyer, individually and as parent and guardian of, Brooke Meyer, Ashley Meyer, and Michael Meyer v. Home Depot U.S.A., Inc. and Eddie Davis, dba Custom Builders,* was filed in the Circuit Court of Tennessee for the Thirtieth Judicial District at Memphis.  *See* Plaintiff's Appendix in Support of Motion for Summary Judgment  ("Pl. App."), Exhibit "C."  The court will refer to the complaint from the underlying lawsuit as the "Meyers' complaint."

Davis, on June 14, 1999, with Home Depot included as an "additional insured."[3]  The policy was

to run from September 1, 1999 to September 1, 2000; however, Davis canceled the policy on

November 5, 1999.  Pl. App. at 39.

The policy provides insurance for "bodily injury" or "property damage" only if "(1) [t]he

'bodily injury' or 'property damage' is caused by an 'occurrence' that takes place in the 'coverage

territory;' and (2) [t]he 'bodily injury or 'property damage' occurs during the policy period."  *Id.* at

8.  The policy defines "bodily injury" as "bodily injury, sickness or disease sustained by a person,

including death resulting from any of these at any time."  *Id.* at 18.  The policy defines "property

damage" as:

> a. [p]hysical injury to tangible property, including all resulting loss of use of that
> property.  All such loss of use shall be deemed to occur at the time of the physical
> injury that caused it; or
> b. [l]oss of use of tangible property that is not physically injured.  All such loss of
> use shall be deemed to occur at the time of the 'occurrence' that caused it."

*Id.* at 21.  The "coverage territory" includes the "United States of America."  *Id.* at 18.  The policy

defines an "occurrence" as "an accident, including continuous or repeated exposure to substantially

the same general harmful conditions."  *Id.* at 20.

The parties do not dispute that the Meyers' complaint alleged that they suffered bodily injury

and property damage caused by an occurrence within the coverage territory that could be covered

by the scope of the policy, as those terms are defined.  Ohio, however, disputes that the Meyers'

complaint alleged injury or damage occurring *during* the policy period.  Home Depot contends that,

because the Meyers' complaint alleged injuries or damages *possibly* occurring within the policy

period, Ohio had a duty to defend, and it seeks reimbursement for $57,883.05 in attorney's fees and

---

[3]Home Depot required Davis to purchase such insurance and to include it as an additional insured as part of its
installer agreement with Davis. *See* Pl. App at 43.

expenses incurred for defending the underlying lawsuit.[4]  Ohio argues that, because the Meyers'

injuries and damages did not manifest until after the policy expired, no duty to defend was triggered

within the policy's coverage period.  Ohio also argues that the conditions for coverage were not met,

because Home Depot violated the policy's notice provision, which requires an insured to provide

written notice of a claim "as soon as practicable," and copies of a summons or other legal papers

"immediately" upon their receipt.  Defendant Ohio Casualty's Brief in Support of its Motion for

Summary Judgment Appendix ("Def. App.") at 16-17.  Specifically, Ohio argues that Home Depot

provided its first notice of the underlying suit to Ohio on June 28, 2005; however, the Meyers first

filed suit against Home Depot and Davis on April 30, 2004, in federal court in the Western District

of Tennessee before voluntarily dismissing that suit for lack of subject matter jurisdiction and filing

the underlying lawsuit at issue in Tennessee state court on November 10, 2004.  *See* Def. App. at

40, 64-77.  In response, Home Depot argues that Ohio was not prejudiced by its failure to strictly

follow the policy's notice provisions, because Davis had notified Ohio in 2003 of damage to the

Meyers' home.  Finally, Ohio asks that if the court does not grant its motion for summary judgment,

that it grant a partial summary judgment ruling that Home Depot is not entitled to attorney's fees,

as requested, for prosecuting this action.

     Since the both parties have moved for summary judgment using the same facts to support

their opposing legal positions, the court will first address the issue of whether the Meyers' complaint

---

[4]Ohio states in one of its briefs that it believes the underlying lawsuit has been settled.  Defendant Ohio Casualty's Brief in Support of its Motion for Summary Judgment ("Def. Br.") at 12.  Home Depot has not clarified this point; however, its summary judgment motion does seek "reimbursement" for a finite amount of attorney's fees and expenses, and does not suggest that additional fees are continuing to accrue. Additionally, Home Depot's appendix includes an affidavit from one of its attorneys verifying the amount of attorney's fees incurred, supported by billing records, and the affidavit does not state that additional fees are continuing to accrue.

alleges facts sufficient to trigger Ohio's duty to defend Home Depot in the underlying lawsuit.  The court will then address the late-notice issue.

## II. LEGAL STANDARDS

### A. Summary Judgment

Summary judgment shall be rendered when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-25 (1986); *Ragas v. Tennessee Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998).  A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  When ruling on a motion for summary judgment, the court is required to view all inferences drawn from the factual record in the light most favorable to the nonmoving party.  *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986); *Ragas*, 136 F.3d at 458.  Further, a court "may not make credibility determinations or weigh the evidence" in ruling on motion for summary judgment.  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson*, 477 U.S. at 254-55.

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue.  *Matsushita*, 475 U.S. at 586.  Mere conclusory allegations are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment.  *Eason v. Thaler*, 73 F.3d 1322, 1325 (5th Cir. 1996).

Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence. *See Forsyth v. Barr*, 19 F.3d 1527, 1533 (5th Cir.), *cert. denied*, 513 U.S. 871 (1994). The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his claim. *Ragas*, 136 F.3d at 458. Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.*; *see also Skotak v. Tenneco Resins, Inc.*, 953 F.2d 909, 915-16 & n.7 (5th Cir.), *cert. denied*, 506 U.S. 832 (1992). "Only disputes over facts that might affect the outcome of the suit under the governing laws will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248. Disputed fact issues which are "irrelevant and unnecessary" will not be considered by a court in ruling on a summary judgment motion. *Id.* If the nonmoving party fails to make a showing sufficient to establish the existence of an element essential to its case and on which it will bear the burden of proof at trial, summary judgment must be granted. *Celotex*, 477 U.S. at 322-23.

### B. Applicability of Tennessee Law

Home Depot contends, and Ohio does not dispute, that Tennessee substantive law applies to this case. *See* Pl. Br. at 5-6; Def. Br. at 12-13. The court agrees, even though the two parties to this dispute maintain their principal places of business in Georgia and Ohio. *See* Plaintiff's Original Complaint and Request for Declaratory Judgment at 1-2. Texas and Tennessee have adopted the "most significant relationship" test for determining the applicable substantive law in disputes involving insurance policies that do not include a contractual choice of law provision. *Atlantic Mut. Ins. Co. v. Truck Ins. Exchange*, 797 F.2d 1288, 1291 (5th Cir. 1986); *Duncan v. Cessna Aircraft Co.*, 665 S.W.2d 414, 421 (Tex. 1984). The relevant factors in determining which state's law

applies include:   (1) the place of contracting; (2) the place of negotiation; (3) the place of performance; (4) the location of the subject matter of the contract; and (5) the domicile, residence, nationality, place of incorporation, and place of business of the parties.  *Minn. Mining & Mfg. Co. v. Nishika Ltd.*, 953 S.W.2d 733, 735-36 (Tex.1997); Restatement (Second) of Conflict of Laws § 188(2).  Home Depot states that Tennessee has the most significant relationship with the parties and the policy in dispute because Ohio issued the policy to Davis in Tennessee, where Davis maintained his principal place of business, through Ohio's Tennessee office and broker in Tennessee; and that Davis could pay all premiums and send all correspondence to his agent in Tennessee.  Pl. Br. at 6. As both parties agree that Tennessee has the most significant relationship to the subject matter of this dispute, this court will apply Tennessee law to the substantive issues in dispute.

## III.  ANALYSIS

### A.  Duty to Defend

Under Tennessee law, "whether a duty to defend arises depends solely on the allegations contained in the underlying complaint."  *The Travelers Indem. Co. of Am. v. Moore & Assocs., Inc.*, 216 S.W.3d 302, 305 (Tenn. 2007) (internal citations omitted).  The insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which "there is a potential basis for recovery."  *Id.*  "The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact."  *Id.*  Thus, an insurer will commonly have a duty to defend based on the allegations in the complaint, but no duty to indemnify if "a trial on the merits of the underlying claim proves the facts to be otherwise than as alleged."  *St. Paul Fire and Marine Ins. Co. v. Torpoco*, 879 S.W.2d 831, 835 (Tenn. 1994).  Furthermore, "[i]f even one

of the allegations [in the underlying complaint] is covered by the policy, the insurer has a duty to defend, irrespective of the number of allegations that may be excluded by the policy." *Drexel Chem. Co. v. Bituminous Ins. Co.*, 933 S.W.2d 471, 480 (Tenn. Ct. App. 1996). The "overriding public policy . . . is that ambiguities in insurance policies are to be construed against the drafter of the policy." *Id.* Thus, "[a]ny doubt as to whether the claimant has stated a cause of action within the coverage of the policy is resolved in favor of the insured." *Travelers*, 215 S.W.3d at 305.

In this case, Ohio does not dispute that the Meyers' complaint alleged damages within the risk covered by the insurance policy—namely bodily injury and property damage caused by an occurrence within the coverage territory. Ohio argues, however, that the Meyers' complaint failed to allege that these damages occurred during the policy period, which lasted 66 days between September 1, 1999 and November 5, 1999, the date Davis canceled the policy. Def Br. at 7, 9-10. Ohio argues that the Meyers' complaint alleged that they noticed damage "[s]everal years after the windows were installed," which would have been at least two years after their installation in 1998, or some time after February 23, 2000.[5] Def. Br. at 13-14. Ohio argues that, since the coverage period expired in November 1999, the Meyers' complaint did not allege that any property damage occurred during the policy period, because their complaint did not allege that any damage occurred prior to its discovery or manifestation. Def. Br. at 13-15. Ohio further argues that this court should apply a "manifestation trigger" theory, applied by many courts, which hold that for continuing damage that was latent for an unknown period of time, damage is deemed to occur when the damage

---

[5]Ohio's brief states merely that the windows were installed "sometime after" their purchase on February 23, 1998 (the date of purchase alleged by the Meyers' complaint). *See* Def. Br. at 13. Neither party states in its briefs exactly when the windows were installed; however, a letter from Ohio to Davis dated September 11, 2003, notes that the windows were installed on April 23, 1998. Appendix to Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl. Resp. App.") at 1.

**Memorandum Opinion and Order – Page 8**

is discovered or manifests.  Def. Br. at 15-16.  Ohio notes that Tennessee has not adopted the manifestation trigger theory, or any other theory for determining when latent damage occurs; however, Ohio cites to several other courts that have adopted this rule, and urges the court to make an Erie guess that Tennessee would also adopt this rule.  Def. Br. at 16.  Home Depot argues that the cases cited by Ohio are inapplicable, since they address the manifestation trigger in the context of an insurer's duty to indemnify, rather than a duty to defend, which is broader.  Plaintiff's Response to Defendant's Motion for Summary Judgment ("Pl. Resp.") at 5.  The court determines that existing Tennessee law is sufficient to determine that Ohio has a duty to defend in this case, without resorting to an Erie guess as to whether Tennessee would adopt Ohio's manifestation trigger theory.

Under Tennessee law, a duty to defend depends solely on the allegations contained in the underlying complaint, and the duty arises so long as there is a *potential basis* for recovery. *Travelers*, 216 S.W.3d at 305 (emphasis added).  The Meyers' complaint states that they entered into a contract with Home Depot for the purchase and installation of four windows on February 23, 1998. Def. App. at 46.  The relevant portions of the Meyers' complaint go on to state that:

> 11.   Several years after the windows were installed the Meyer[]s noticed water intrusion in the house and all of the Plaintiffs in the Meyer home began to experience medical problems.
> 12.   It wasn't until May 28, 2003 that the Meyer[]s confirmed with the Defendants that the replacement windows were installed in a gross unworkmanlike manner.  The windows were installed upside down and backwards.
> 13.   It was the improper installation of the windows which created the hazardous conditions creating the water intrusion problems.
> 14.   The water intrusion lead to the presence of significantly elevated mold contaminants within the Meyer's house.
> 15.   As a result of the water intrusion and mold the Meyer[]s['] residence was rendered uninhabitable.  The water intrusion caused the wooden structure of the house to decay and created health issues for the Meyer family.  The floors and walls of the Meyer household began to decay.

*Id.* at 47.  Home Depot has presented evidence that Davis installed the windows on April 23, 1998.

*See* Pl. Resp. App. at 1 (Letter from Ohio to Davis dated September 11, 2003, which notes that the

windows were installed on April 23, 1998).  The Meyers' complaint simply alleged that "several

years after the windows were installed, they noticed water intrusion."  Pl. App. at 47.  The court

determines that, under Tennessee law, the Meyers' complaint raised a potential basis for recovery,

because it is possible that if the windows were installed between February and April 1998, water

intrusion and the attendant property damage could have occurred in 1999, within the 66-day period

in which the insurance policy was effective.  To determine otherwise would be to hold, as a matter

of law, that the Meyers' complaint alleged property damage that could *not* have occurred between

September 1 and November 5, 1999.  This the court will not do.  As the Tennessee Supreme Court

has stated, "[a]ny doubt as to whether the claimant has stated a cause of action within the coverage

of the policy is resolved in favor of the insured." *Travelers*, 216 S.W.3d at 305.  Here, the ambiguity

in the Meyers' complaint regarding the timing of the damages must be resolved in favor of Home

Depot.  The Sixth Circuit followed the same rational in a case applying Tennessee law, where it

determined  that the insurer had a duty to defend because the policy was "ambiguous as to when the

injury must occur."  *See State Farm Fire and Cas. Co. v. McGowan*, 421 F.3d. 433, 439 (6th Cir.

2005).  In resolving the ambiguity in favor of the insured, the court noted that the insurer "easily

could have included explicit language limiting any coverage based on the timing of the injury, but

it did not do so." *Id.* at 439.  In the current case, Ohio could have included explicit language limiting

coverage to damage that "manifests" or is "discovered" within the coverage period, but it did not

do so.

**Memorandum Opinion and Order – Page 10**

Ohio also argues that the Meyers' complaint did not allege property damage due to loss of use occurring within the policy period, because it is impossible for them to have lost the use of their property until they discovered the damage.  Def. Br. at 15.  This argument ignores the plain language of Ohio's policy, which states that "[a]ll . . . loss of use shall be deemed to occur at the time of the physical injury that caused it."  Pl. App. at 39.  Ohio's policy, therefore, contemplates that property damage may occur prior to its discovery, and specifically states that such damage is deemed to occur at the time of the physical injury.  As the court has stated, it is possible that the physical injury to the Meyers' property, the water intrusion, could have occurred within the policy period.  Accordingly, the Meyers' complaint regarding property damage alleged a potential basis for recovery that triggered Ohio's duty to defend.

Ohio argues separately that bodily injury did not occur within the coverage period, since the Meyers' complaint alleged that their health problems began several years after the windows were installed.  Def. Br. at 13-14.  Even if no bodily injury could have occurred within the 66-day period in which this insurance policy applied, Ohio's duty to defend is still triggered by the court's determination that property damage could have occurred within that period.  If just one of the allegations in the Meyers' complaint states a potential basis for recovery, Ohio has a duty to defend its insured against all claims, "irrespective of the number of allegations that may be excluded by the policy."  *See Drexel*, 933 S.W.2d at 480.  Accordingly, the court determines that the Meyers' complaint alleged facts sufficient to trigger Ohio's duty to defend Home Depot as an additional insured under the policy issued to Davis.

**B. Late Notice**

Ohio contends that it is entitled to summary judgment because Home Depot failed to give timely notice of the Meyers' claim or suit, which is a required condition for coverage under the terms of the policy. Def. Br. at 20-22. The policy places the following conditions on the insured:

> a. You must see to it that we are notified as soon as practicable of an "occurrence"' or an offense which may result in a claim.
> b. If a claim has been made or "suit" is brought against any insured, you must (1) immediately record the specifics of the claim or "suit" and the date received; and (2) notify us as soon as practicable.
> You must see to it that we receive written notice of the claim or "suit" as soon as practicable.
> c. You and any other involved insured must (1) immediately send us copies of any demands, notices, summons or legal papers received in connection with the claim or "suit."

Def. App. at 16. Ohio argues that Home Depot failed to give any notice of any suit until June 28, 2005, even though the Meyers first filed suit against Home Depot and Davis on April 30, 2004, in federal district court before voluntarily dismissing that suit and filing the underlying suit at issue in Tennessee state court on November 10, 2004. Def. Br. at 22. In short, Ohio argues that the notice provision was breached, because it had no knowledge of any claims against Home Depot as an additional insured until seven months after the second lawsuit was filed. Home Depot does not dispute that it first provided notice of the Meyers' suit on June 28, 2005; however, Home Depot points out that Davis notified Ohio of damage to the Meyers' home in September 2003, before any suit was filed. Pl. Resp. at 13-14. Home Depot argues that since Ohio had notice of the Meyers' claim before the first lawsuit was filed on April 30, 2004, Ohio was not prejudiced by Home Depot's late notice of the second lawsuit, and it should be excused from strict adherence to the notice provision. Pl. Resp. at 14.

**Memorandum Opinion and Order – Page 12**

Under Tennessee law, notice is a condition precedent to recovery under the policy; however, late notice may be excused provided the insurer is not prejudiced. *American Justice Ins. Reciprocal v. Hutchison*, 15 S.W.3d 811, 818 (Tenn. 2000); *Alcazar v. Hayes*, 982 S.W.2d 845 (Tenn. 1998). The burden of proving that the insurer is not prejudiced falls on the insured who breached the notice requirement of the insurance contract. *Hutchison*, 15 S.W.3d at 818. As the Tennessee Supreme Court stated:

> [O]nce it is determined that the insured has failed to provide timely notice in accordance with the insurance policy, it is presumed that the insurer has been prejudiced by the breach. The insured, however, may rebut this presumption by proffering competent evidence that the insurer was not prejudiced by the insured's delay.

*Id.* at 818 (quoting *Alcazar*, 982 S.W.2d at 856). *Alcazar* first adopted this rule of presumed prejudice in the context of uninsured motorist insurance policies. *Alcazar*, 982 S.W.2d at 856 n.14. *Hutchison* extended the application of this rule to all general liability insurance policies. *Hutchison*, 15 S.W.3d at 817-18. The court determines that Home Depot has failed to rebut the presumption of prejudice with competent summary judgment evidence.

Home Depot has presented three letters to support its contention that Ohio was not prejudiced by its late notice. The first is a letter sent by Ohio to Davis dated September 11, 2003. Pl. Resp. App. at 1. The letter refers to statements Davis made on September 9, 2003, indicating that the Meyers held Davis responsible for improperly installed windows that leaked. *Id.* The letter stated, "[a]t the time the damage manifested itself our policy was not in effect[.]" The letter goes on to state, however, that Ohio "accepts this first notice of loss from you conditionally with full reservation of rights and defenses under the policy," and that it would "undertake its investigation into the facts and circumstances of this claim with the definite understanding that it is not waiving

any rights it may have under the policy contract because of the above-mentioned coverage question[.]" *Id.* at 1-2. Pl. Resp. Br. at 13-14. The second letter, also sent by Ohio to Davis, is dated June 15, 2004. Pl. Resp. App. at 3. In it, Ohio notified Davis that "there would be no coverage for this incident" because the policy was not in effect at the time the damage occurred." *Id.* The letter closes with these two sentences:

> If any of the facts or policy provisions referred to above are incorrect or if there are others you would like for us to be aware of, please contact us and we will reconsider our decision based upon that information. In the event a lawsuit is filed relating to this matter, please immediately provide a copy to us for review as this may change our position regarding coverage and defense on your behalf.

*Id.* Home Depot argues that these two letters prove Ohio had notice of a claim from Davis as early as September 2003, and was not prejudiced by its own late notice of the second lawsuit. Pl. Resp. Br. at 13-14. Through the third letter, from Ohio to Home Depot's counsel, dated November 8, 2005, Home Depot argues that Ohio is not prejudiced by its late notice, because Ohio denies coverage based on its position that the damages fall outside the coverage period, rather than based on any prejudice as a result of late notice. *Id.* at 6; Pl. Resp. at 17. Additionally, Home Depot argues in a footnote in its response brief that the notice requirement should be less stringently applied to it as an additional insured. Pl. Resp. at 17, n.15. The court finds this evidence and these arguments insufficient to overcome the presumption of prejudice.

Under Tennessee law, the term "'as soon as practicable' imposes a duty on the insured to give notice when he becomes, or should become, aware of facts which would suggest to a reasonably prudent person that the event for which coverage is sought might reasonably be expected to produce a claim against the insurer." *United States Fire Ins. Co. v. Vanderbilt University*, 82 F.Supp.2d 788, 794 (M.D. Tenn 2000) (applying Tennessee law, citing *Reliance Ins. Co. v. Athena Cablevision*

**Memorandum Opinion and Order – Page 14**

*Corp.*, 560 S.W.2d 617, 618 (Tenn. 1977); *Lee v. Lee*, 732 S.W.2d 275, 276 (Tenn. 1987)).  In this case, the Meyers' complaint states that they "confirmed with Defendants that the windows were installed in a gross unworkmanlike manner" on May 28, 2003.  Pl. App. at 47.  The "Defendants" in the Meyers' lawsuit include Home Depot; therefore, Home Depot and Davis both had notice of a claim as early as May 28, 2003.  Home Depot's evidence shows that Davis contacted Ohio about this claim in September 2003, and it relies on Davis's notice to Ohio as reasonable notice of the claim.  Under Tennessee law, even Davis's notice would not meet the standard for reasonable notice, since it was not provided as soon as practicable.  Home Depot has provided no competent summary judgment evidence to show that Ohio was not prejudiced by this delay.  Home Depot incorrectly relies on Ohio's awareness of a possible claim in 2003 as proof that Ohio was not prejudiced.  Under Tennessee law, the burden is on Home Depot to show how such awareness of a claim did not prejudice Ohio when the subsequent lawsuits were filed without timely notice to Ohio, and Home Depot has not met this burden.

Additionally, the Meyers filed their first lawsuit against Home Depot and Davis on April 30, 2004, in federal court.  Def. App. at 66.  Home Depot has provided no evidence that either it or Davis notified Ohio of this suit, as soon as practicable, or that either of them forwarded copies of the legal papers immediately.  Moreover, Ohio's second letter to Davis indicates that it had no knowledge of the first lawsuit as of June 15, 2004, since the letter specifically requested immediate notification, "[i]n the event a lawsuit is filed . . . as this may change our position regarding coverage and defense on your behalf."  Pl. Resp. App. at 3.  Home Depot provides no evidence that its failure to notify Ohio of this first lawsuit did not prejudice Ohio or impair its right to reevaluate its position regarding coverage, as Ohio had requested.  Home Depot's brief suggests that Ohio had the

opportunity to conduct an investigation into the Meyers' claim when it first received Davis's notice in September 2003.  Pl. Resp. App. at 18.  Home Depot argues that, in declining coverage, Ohio never cited late notice as a reason for its denial, and that Ohio never stated its ability to provide a defense would be hampered by late notice.  *Id.*  Under Tennessee law, however, the burden is not on Ohio to show that it was prejudiced; the burden falls on Home Depot to show that Ohio's ability to further investigate the claim, once suit was filed, was not hampered by its untimely notice.  While Home Depot has argued that no prejudice occurred, it has not provided any competent summary judgment evidence that no prejudice occurred.

The underlying state court lawsuit at issue, filed November 10, 2004, after the Meyers voluntarily dismissed their federal suit, is the action for which Home Depot sues Ohio for failing to defend.  Home Depot acknowledges that its first notice to Ohio of this matter was dated June 28, 2005.  Such notice occurred more than seven months after the second suit was filed, more than a year after the first suit was filed, and more than two years after Home Depot first confirmed that faulty installation had occurred.  Home Depot has provided no explanation for its delay.  While Ohio may have had notice from Davis of a possible claim by the Meyers as early as September 2003, Ohio clearly reserved its rights through its response letters to Davis, and noted in its second letter to Davis that in the event a lawsuit was filed, it wanted immediate notice, since it could change its position regarding coverage and *defense*.  Pl. Resp. App. at 1-3 (emphasis added).  As Home Depot has pointed out, a duty to defend is broader than the duty to indemnify.  Ohio's letter shows that it was willing to evaluate its duty to defend in the event of a lawsuit, even though it believed it had no duty to indemnify its insured for the damages claimed.  Ohio notes in its reply brief that had Home Depot provided it with timely notice of its involvement as an additional insured, it may have been

motivated differently to investigate the Meyers' claims.  *See* Defendant Ohio Casualty's Reply in Support of its Motion for Summary Judgment and Brief in Support ("Def. Reply") at 4-5.  Home Depot has presented no competent evidence to show that Ohio was not prejudiced by its late notice. For example, Home Depot has not shown that, in spite of its untimely notification, that Ohio was able to reevaluate or to further investigate the claims and suits brought by the Meyers.  Home Depot attempts to "piggyback" on Davis's notification.  Such reliance on *Davis's* notification to Ohio in September 2003 of a possible claim by the Meyers is simply too slender of a reed to overcome the presumption that Ohio was prejudiced by Home Depot's untimely notification of the subsequent November 2004 lawsuit at issue.

As for Home Depot's argument that it should be held to a less stringent notice standard as the additional insured, the court agrees with Ohio that such an argument is disingenuous under the circumstances.  As Ohio points out, Home Depot required its installer, Davis, to purchase liability insurance and to include it as an additional insured.  *See* Def. Reply at 4.  Home Depot, therefore, knew of the existence of the policy, and, as a sophisticated corporate entity, should have familiarized itself with the terms of the policy.[6]  Finally, Ohio argues that Home Depot's requested damages are excessive, and that some of the billing evidence provided by Home Depot in support of its summary judgment motion include expenses not related to defending against the underlying lawsuit. Defendant's Response to Plaintiff's Motion for Summary Judgment at 20-21.  Home Depot has not shown that its late notice did not hinder Ohio's ability to assist in the investigation and defense of

---

[6]Additionally, Home Depot's argument relies on an unpublished opinion, in which the court determined no prejudice occurred when the insured notified its insurer of the car accident immediately following its occurrence, but failed to forward notice of suit because the insured passed away 34 days after suit was filed. Pl. Resp. Br. at 17 n.15 (citing *White v. Tenn. Farmers Mut. Ins. Co.*, 1996 WL 219674, *3-4 (Tenn. Ct. App. April 26,1996)).  The court finds the facts of the *White* case completely inapplicable to the facts at hand, as Home Depot has provided no excuse, much less the excuse of death, for its delay.

**Memorandum Opinion and Order – Page 17**

the underlying suit, which could have mitigated some of the costs associated with such a defense. In sum, the court determines that Home Depot has failed to provide sufficient evidence to overcome the presumption of prejudice resulting from its late notice to Ohio of the underlying lawsuit. Accordingly, Home Depot has failed to raise a genuine issue of a material fact as to whether their untimely notice prejudiced Ohio, and Ohio is, therefore, entitled to judgment as a matter of law.

## IV. CONCLUSION

For the reasons stated herein, the court determines that Home Depot has failed to show that a genuine issue of material fact exists as to Ohio's duty to defend it in the underlying suit. Ohio is, therefore, entitled to judgment as a matter of law, and the court **grants** Defendant Ohio Casualty's Motion for Summary Judgment. As the court grants summary judgment in favor of Ohio, it would be inconsistent with the court's decision to now grant summary judgment in favor of Home Depot. Accordingly, the court **denies** Plaintiff Home Depot U.S.A., Inc.'s Motion for Summary Judgment. The court **dismisses with prejudice** Home Depot's claims against Ohio. Judgment will issue by separate document as required by Fed. R. Civ. P. 58.

**It is so ordered** this 20th day of July, 2007.

Sam A. Lindsay
United States District Judge